Ahren A. Tiller (250608)
Wilfred Eugene Briesemeister (68707)
Brett F. Bodie (264452)
Bankruptcy Law Center, APC
1230 Columbia St., Suite 1100
San Diego, CA 92101
Ph:(619) 894-8831
Fax:(866) 444-7026

Attorneys for Debtor
JORGE ALBERTO CAZARES RODRUIGUEZ

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JORGE ALBERTO CAZARES RODRUIGUEZ | CASE NO.: 11-16362-LT7 |
| Debtor / Movant, | **MOTION FOR CONTEMPT AND SANCTIONS AGAINST 1401 – 1463 NORTH BROADWAY MAINTENANCE CORPORATION: RANCHO BERNARDO CONDOMINIUM MANAGEMENT INC. dba. ELITE COMMUNITY MANAGEMENT; AND SOMMERSET WOODS HOMEOWNER'S ASSOCIATION FOR VIOLATION OF THE DISCHARGE INJUNCTION** |
| vs. | |
| 1401 – 1463 NORTH BROADWAY MAINTENANCE CORPORATION, a California Corporation; RANCHO BERNARDO CONDOMINIUM MANAGEMENT INC., a California Corporation dba. ELITE COMMUNITY MANAGEMENT; SOMMERSET WOODS HOMEOWNER'S ASSOCIATION; and DOES 1-10. | |
| Respondents, | [11 U.S.C. § 542(a) and 11 U.S.C. § 105(a)] |

JORGE ALBERTO CAZARES RODRUIGUEZ, (hereinafter referred to as "Debtor") by and through his counsel of record, hereby moves this court for an Order for Contempt, an award of Damages and Sanctions consisting of injunctive relief, monetary relief, attorneys fees and costs pursuant to 11 U.S.C §524 and 11 U.S.C. §105 against SOMMERSET WOODS HOA; 1401 – 1463 NORTH BROADWAY MAINTENANCE CORPORATION; and RANCHO BERNARDO CONDOMINIUM MANAGEMENT INC., dba ELITE COMMUNITY MANAGEMENT, (hereinafter referred to collectively as "Respondents") for violating the discharge injunction. This motion is based on good cause, the Memorandum of Points and Authorities in supoort, and Declarations of the Debtor and his Counsel filed hereto.

**INTRODUCTION**

SOMMERSET WOODS HOA; 1401 – 1463 NORTH BROADWAY MAINTENANCE CORPORATION; and RANCHO BERNARDO CONDOMINIUM MANAGEMENT INC., dba ELITE COMMUNITY MANAGEMENT are in essence the same entity. They have collaborated with one another as the Debtor's Homeowner's Association, and have jointly collected on a discharged debt.

As discussed below in a separate section, at all times mentioned, there existed a unity of interest and/or ownership between the four Respondents on the one hand, such that any individuality and separateness between them has ceased to exist, and that each and every Respondent and DBA is the alter ego of the other, who at all relevant times exercised dominion and control over the assets and claims of the other entity. All of the Respondents named in this Motion for Contempt have acted as the Debtor's Homeowner's Association, made a claim to ownership of those HOA dues, and have violated the discharge injunction by collecting on said discharged claim against the Debtor. The separate names and DBA's are mere shells, instrumentalities or conduits used by the Debtor's Homeowner's Association to conduct their businesses and possibly shield against liability. Adherence to the fiction of a separate existence of one of the Respondents from the other would permit abuse of the corporate privilege and produce an inequitable result, because it would allow the Respondents to avoid liability for their wrongful conduct.

Therefore, hereafter the Debtor files this motion against all four Respondents jointly and in said motion refers to these four entities merely in the plural as "Respondents."

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**STATEMENT OF FACTS**

On September 30, 2011, the Debtor filed a Chapter 7 voluntary bankruptcy petition (Case #11-16362-LT7) in the Southern District of California Bankruptcy Court.

On January 4, 2012, the Debtor received a discharged order (Docket # 11) in said case.

On January 9, 2012, the Bankruptcy Court Clerk issued an order approving the Trustee's report of no distribution and closing the case.

| | |
|---|---|
| 1 | The Debtor listed "SOMMERSET WOOD HOA" on the bankruptcy petition and noticed them |
| 2 | via this Court's mailing matrix.  The address listed on the Creditor Mailing Matrix was the same |
| 3 | address listed on the Respondent's website (www.sommersetwoods.com), which listed ELITE |
| 4 | COMMUNITY MANAGEMENT as their agent at the same address (See: Exhibit A). |
| 5 | All pre-petition HOA dues were discharged as to the Debtor by the Chapter 7 case pursuant to |
| 6 | 11 U.S.C. 523(a)(16).  Since filing the Debtor's Chapter 7 bankruptcy, the Debtor has made all post- |
| 7 | petition payments to the Respondents on time and as scheduled.  Attached to this motion is a |
| 8 | breakdown of the Debtor's HOA payment history, which demonstrates he has been current with all |
| 9 | post-petition payments (See: Exhibit B). |
| 10 | In verbal and email communications since his bankruptcy discharge in January of 2012, the |
| 11 | Debtor has discussed his bankruptcy filing and its effects on any pre-petition HOA dues with |
| 12 | employees and agents of the Respondents multiple times.  The Debtor's pre-filing HOA's were |
| 13 | discharged and he has paid all post-filing HOA fees as they have come due, thus there was never a |
| 14 | post-bankruptcy past due balance owing. |
| 15 | In April of 2013, to the Debtor's surprise, the Debtor's father was served with a Complaint and |
| 16 | Summons filed by 1401 – 1463 NORTH BROADWAY MAINTENANCE CORPORATION, seeking |
| 17 | to collect on over $5,000.00 of pre-petition discharged HOA dues (See Exhibit C – Register of |
| 18 | Actions).  In response to the lawsuit, the Debtor immediately emailed Heather Daly, an employee of |
| 19 | the Respondents, explaining that he had filed bankruptcy and that the lawsuit sought to collect on pre- |
| 20 | petition HOA dues dating back to 2009, which was a violation of his bankruptcy discharge.  Ms. Daly |
| 21 | referred the Debtor to an attorney representing 1401 – 1463 NORTH BROADWAY |
| 22 | MAINTENANCE CORPORATION (a copy of Emails is attached hereto and marked as: Exhibit D). |
| 23 | On May 10, 2013, before the small claims court hearing date, the Debtor spoke with the |
| 24 | attorney representing 1401 – 1463 NORTH BROADWAY MAINTENANCE CORPORATION and |
| 25 | explained that the alleged debt was discharged as to the Debtor in his prior Chapter 7 case.  The |
| 26 | attorney requested copies of the bankruptcy paperwork and assured the Debtor that the suit was an |
| 27 | error and would be dismissed immediately. |
| 28 | In reliance upon the attorney for Respondent's representations, Debtor provided the |

1 requested copies of his bankruptcy paperwork to the attorney and to Ms Daly and did not attend the
2 Small Claims court hearing.  Despite providing the Respondents with clear evidence of the Discharge
3 violation on May 10, 2013 (See Exhibit D – E-mails), the Respondents did not dismiss the action as
4 promised, yet instead the lawsuit continued and 1401 – 1463 NORTH BROADWAY
5 MAINTENANCE CORPORATION attended the Small Claims trial on May 16, 2013 (See Exhibit C-
6 ROA), and obtained a default judgment against the Debtor for $5,114.40 on May 20, 2013 (See
7 Exhibit E – Judgment).

8      Since the judgment was entered, the Debtor has repeatedly requested the judgment be released
9 and the suit dismissed due to the fact that it was obtained in violation of his bankruptcy discharge.  He
10 has communicated this to the employees of the SOMMERSET WOODS HOA and their Agents, 1401
11 – 1463 NORTH BROADWAY MAINTENANCE CORPORATION, and ELITE COMMUNITY
12 MANAGEMENT (a dba of RANCHO BERNARDO CONDOMINIUM MANAGEMENT INC.) both by
13 phone and by email.  The Debtor has also provided them copies of his bankruptcy paperwork at their
14 specific request.  The respondents have been noticed by the bankruptcy court, the Debtor has verbally
15 discussed his bankruptcy case with both the employees of the Respondents and an attorney
16 representing the Respondents, and the Debtor has additionally provided the Respondents and their
17 attorney additional courtesy copies of his bankruptcy paperwork.

18      Despite the Debtor's repeated efforts to get the Respondents to rectify their ongoing and willful
19 violation of the discharge injunction, they have taken no action to release the judgment or resolve their
20 unlawful conduct.

21      On March 31, 2014, Counsel for the Debtor called the Respondents and was transferred to a
22 voicemail, where he left a voicemail explaining the situation and the urgency of the matter.

23      On April 2, 2014, Debtor's Counsel also mailed out a letter to the Respondents regarding the
24 unlawful judgment obtained in violation of the discharge injunction.

25      On April 14, 2014, Debtor's Counsel's office made a follow up call to Respondents regarding
26 this judgment.

27      On April 21, 2014, Debtor's Counsel again telephoned the Respondents informing them to
28 immediately cease this unlawful action.  Each time Counsel for the Debtor telephoned the Respondents

1 he was either placed on an extended hold or was forced to leave a message.

2 On April 21, 2014, Debtor's Counsel also sent a follow up letter to respondents.

3 On May 9, 2014, Debtor's Counsel was forced to draft and file a Motion to Reopen the
4 Bankruptcy case in order to file this Motion for Sanctions.

5 In addition to the multiple telephone calls and letters, the Respondents were also noticed of the
6 motion to reopen this case for the purpose of filing a Motion for Sanctions. Despite all of these efforts
7 by the Debtor and his Counsel, the Respondents have not responded nor taken any action to correct
8 their ongoing and willful violation of the discharge injunction.

9 Due to the Respondents' willful violation of the discharge injunction and despite the Debtor's
10 bankruptcy attorney's letters and telephone calls, the Respondents have repeatedly been unwilling to
11 rectify said violation voluntarily, therefore Debtor's attorney has been forced to draft and file said
12 Motion for Sanctions. The underlying debt has been discharged for over two (2) years, however in
13 violation of this Court's discharge order the Respondents have not only attempted to unlawfully collect
14 on this debt, yet have entered a judgment against the Debtor and ruined his post-filing credit for the
15 last 14 months.

16 The Debtor has executed a declaration attached hereto describing the facts laid out above. As
17 described in the declaration, the Debtor has suffered stress and harassment, has expended significant
18 time and energy attempting to resolve this unlawful action, and has had his credit significantly
19 damaged post bankruptcy.

## II.
## LEGAL ANALYSIS

**A. JURISDICTION AND VENUE:**

This Court has subject matter jurisdiction to hear this matter pursuant to 11 U.S.C. §301, 11 U.S.C. §524 and 28 U.S.C. §157(b)(1), (2)(O), respectively. This matter is a core proceeding under 28 U.S.C. §157 and therefore the Bankruptcy Court has jurisdiction to enter a final order. It is a core proceeding because the Debtor is asserting his rights created under 11 U.S.C. §524 and 11 U.S.C. §105.

The underlying bankruptcy case was filed in the Southern District of California Bankruptcy Court, therefore Venue lies in this District pursuant to 28 U.S.C. §139 1(b).

### B. RESPONDENTS WILLFULLY VIOLATED THE DISCHARGE ORDER PURSUANT TO 11 U.S.C §524

In a chapter 7 case, the discharge injunction provided by 11 U.S.C. §524(a) operates as an injunction against "... an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived..." 11 U.S.C. 542(a.). A discharge under § 727 discharges a debtor from all prepetition debts, except for those listed in 11 U.S.C. § 523. *Hessinger & Assocs. v. U.S. Tr. (In re Biggar),* 110 F.3d 685, 687 (9th Cir. 1997). Section 524(a) may be enforced through the Court's contempt powers under § 105(a). *Renwick v. Bennett (In re Bennett),* 298 F.3d 1059, 1069 (9th Cir. 2002). The party seeking contempt sanctions has the burden of proving, by clear and convincing evidence, that the creditor (1) knew the discharge injunction was applicable and (2) intended the acts that violated the injunction. *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.),* 450 F.3d 996, 1007 (9th Cir. 2006) (citing *Bennett,* 298 F.3d at 1069). "More specifically, a creditor must have actual knowledge of the discharge injunction, but **need not have any specific intent to violate the injunction**, as simply engaging in a volitional act that does in fact violate the injunction is sufficient to trigger sanctions." *Perry v. U.S. Bank Nat'l Ass'n),* 03.2 I.B.C.R. 128, 129-30 (Bankr. D. Idaho 2003) (internal citation omitted); *In re Hawley,* 03.2 I.B.C.R. 108, 111, 2003 Bankr. LEXIS 448, 2003 WL 21105074, at *5 (Bankr. D. Idaho 2003); *see also Knupfer v. Lindblade (In re Dyer),* 322 F.3d 1178, 1191 (9th Cir. 2003) (In the civil contempt context, the focus "is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue.") (quoting *Hardy,* 97 F.3d at 1390). Once the debtor makes an adequate showing as to these two elements, the burden shifts to the creditor to demonstrate why it was unable to comply with the discharge injunction. *Perry,* 03.2 I.B.C.R. at 130 (citing *Bennett,* 298 F.3d at 1069).

In a no-asset, no-bar date Chapter 7 case, the failure of the Debtor to properly notice or schedule the creditor has no effect on dischargeability. *In re Beezley,* 994 F.2d 1433, 1435 (9th Cir. 1993). In *Beezley*, the Court wrote, "After a case has been closed, dischargeability is unaffected by scheduling;… an amendment of Beezley's schedules [to add the omitted creditor] would thus have been a pointless exercise..." *Id.*

Here, the Respondents were noticed via the Creditor's Mailing Matrix. Furthermore, they were clearly provided with actual notice by the multiple phone calls, conversations with their staff, and letters sent by the Debtor and

Debtor's Counsel, thus any defense based upon service would be improper, since the Respondent's clearly were aware of the bankruptcy discharge and the discharge is unaffected by improper formal service in a no-asset case.

Respondent's actions in this case constitute a willful and egregious violation of the discharge injunction. Respondent was listed in the Debtor's original bankruptcy filing and was noticed by this Court. Despite having no obligation to do so, the Debtor has additionally made the Respondent aware that he filed bankruptcy and has provided the bankruptcy paperwork to the Respondent. Even with the Debtor going beyond his duty to make Respondent aware of their obligations in light of his bankruptcy filing, Respondents have still taken no action to cease their unlawful conduct. Regardless of whether or not the Respondents had a specific intent to violate the discharge injunction, the act of filing a lawsuit against the Debtor and failing to dismiss said suit despite their duty to do so, was clearly not an accidental act and thus done willfully.

In the Debtor's bankruptcy schedules he listed SOMMERSET WOOD HOA at 11717 Bernardo Plaza Court Suite 110 San Diego, CA. SOMMERSET WOODS HOA's website and all information states that all correspondence and notice should be care of: ELITE COMMUNITY MANAGEMENT and lists the contact address as:

> Sommerset Woods HOA
> c/o Elite Community Management
> 11717-110 Bernardo Plaza Court
> San Diego, CA 92128

ELITE COMMUNITY MANAGEMENT is a fictitious business name used by RANCHO BERNARDO CONDOMINUM MANAGEMENT INC. RANCHO BERNANDO COMMUNITY MANAGEMENT INC. lists their agent for service of process registered with the California Secretary of State as:

> Chris Hodge
> 11717 Bernardo Plaza Court Suite 110
> San Diego, CA 92128

1401-1463 NORTH BROADWAY MAINTENANCE CORPORATION is the party who actually sued the Debtor for the pre-petition HOA dues. Their CA Secretary of State registered agent for service of process is:

> Chris Hodge
> 11717 Bernardo Plaza Court Suite 110
> San Diego, CA 92128

All the above entities have the same address and same agent for service of process, and are essentially the same entity (See Exhibit G – CA Secretary of State and San Diego County Business Filing Information For Respondents). The invoices for the past due HOA have the name of SOMMERSET WOODS HOA, yet all payments are to be sent

1  to ELITE COMMUNITY MANAGEMENT, and the Plaintiff in the lawsuit is 1401-1463 NORTH BROADWAY
2  MAINTENANCE CORPORATION (See Exhibit F – Past Due Letter).  Therefore, they are either agents acting in
3  concert with one another and/or the same entity merely with a convoluted corporate structure.
4      All four Respondents were clearly noticed of the Debtor's original bankruptcy filing.  They share the same
5  address, they share the same staff, and continually have all separately and jointly laid claim to the HOA dues owed by
6  the Debtor.  Furthermore, the Debtor has made the Respondents, their agents, and their attorneys repeatedly aware of his
7  bankruptcy filing separate from them being properly noticed by the Bankruptcy Court.
8      Rather than cease collection at the point in which the Respondents became aware of the Debtor's bankruptcy
9  filing, the Respondent chose to aggressively continue collection.  They pursued a civil judgment against the Debtor in
10 violation of the discharge order, have reported this post-petition judgment to the credit bureaus, and have refused to
11 rectify said violation (See Exhibit H – Redacted Copy of Debtor's Current Credit Report)

### C. CIVIL CONTEMPT REMEDIES:

A bankruptcy court may award damages for a violation of the discharge injunction under the Court's contempt power. *State Bd. of Equalization v. Taxel*, 98 F.3d 1147, at 1152 (9th Cir. 1996).  11 U.S.C §105 authorizes the Court to issue "any order that is necessary or appropriate to carry out the provisions of this title."  Damages are a long-recognized sanction for contempt.  The purpose of sanctions is to compensate the opposing party for the injuries which arise from the contempt. *Computer Communications Inc. V. Codex Corp.*, 824 F.2d 725 at 731 (9th Cir. 1987); *Crystal Palace Gambling Hall Inc. V. Mark Twain Industries, Inc.* 817 F.2d 1361 at 1366 (9th Cir. 1987).  Actual damages are broadly construed to embrace consequential damages and include attorneys' fees incurred in the civil contempt action. *In re Zartun*, 30 B.R. 543 at 546 (B.A.P. 9th Cir. 1983).  The contempt need not be willful and there is no good faith exception to violations of the discharge order. *Crystal Palace*, 817 F.2d at 1365; *Petersen v. Highland Music, Inc.*, 140 F.3d 1313 at 1323 (9th Cir. 1998).  Punitive damages may also be imposed for a willful violation of 11 U.S.C. §524.  The test for willfulness under §524 is the same as that for willful violation of the automatic stay under 11 U.S.C. §362. *In re Novak*, 223 B.R. 363 at 366-367 (Bankr. M.D. Fla. 1997).  In the 9th circuit, a "willful violation" does not require a specific intent to violate the automatic stay. *Havelock v. Taxel*, 67 F.3d 187 at 191 (9th Cir. 1995).  Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. *Id*.  Whether the party believes in good faith that it has the right to [take the

action it did] is not relevant to whether the act was 'willful' or whether compensation must be awarded. *Id.*

In this situation, the Respondents repeatedly committed willful violations of the discharge order. The Debtor properly listed the Respondents in his original bankruptcy paperwork. Despite this, they initiated an action to collect on pre-petition HOA fees, which were discharged in his Bankruptcy. Upon receiving the summons, the Debtor contacted the Respondents and was referred to their counsel. Debtor spoke with the attorney for the Respondent and sent in copies of his bankruptcy paperwork. He has also provided the bankruptcy paperwork to the Respondent directly. Despite these unnecessary additional efforts by the Debtor, the Respondents still pursued a judgment in civil court with full knowledge that it would be in violation of the bankruptcy discharge order. Since the judgment was entered, the Debtor has again tried to rectify the issue with the Respondents but the Respondents have been unwilling to release the judgment or cease collection. All of the Respondents' actions were in direct violation of the bankruptcy discharge, and were done with full knowledge of the bankruptcy case. The Respondents simply did not care about the Debtor's bankruptcy and have taken egregious actions post-bankruptcy which have caused the Debtor significant stress, time, energy, and money. Furthermore, the Debtor's credit score was severely damaged by the entry of a civil judgment post-filing and he has been unable to have any credit score recovery post bankruptcy because of the Respondents' actions.

**D. DAMAGES:**

Due to the Respondents' attempts to prosecute and collect on a pre-petition discharged claim, the Debtor has incurred actual damages consisting of mental and emotional distress, nervousness, grief, embarrassment, loss of sleep, anxiety and other injuries. The Respondents have demanded payment from debtor by phone, through written correspondence, and through filing a lawsuit and obtaining a judgment in violation of the discharge injunction. Every time he was contacted by the Respondents, Debtor felt there was no way to resolve the matter, especially after informing the Respondents he had already filed for bankruptcy. The Debtor has further felt hopeless and lost confidence in his Bankruptcy Attorney. He was promised by his Attorney that the Court would discharge this debt, however due to the Respondents actions he has felt his Attorney, Ahren Tiller must have lied to him. Although legally the debts were discharged and his Counsel correctly informed him of said fact, the Respondents willful disregard for this Court's Order and authority has made the Debtor question whether or not this is now true. The Debtor has felt powerless and helpless and has even questioned whether the bankruptcy discharge order has any real power or affect on his life and now. This

entire situation has even made the Debtor question whether or not he ever should have filed in the first place, since said Discharge Order has been completely ignored with no consequences.

Debtor has incurred additional stress and anxiety over this lawsuit, because he no longer lives in California and is unable to come to court to oppose this judgment. The Respondents improperly obtained a default judgment by improperly serving the Debtor's father with the Summons via substituted service at his former home in California, and this has further made the Debtor feel hopeless and powerless to address the Respondent's unlawful conduct. The Debtor was shocked and dismayed to find out after being denied for an offer of credit that the Respondents pursued a judgment in spite of the bankruptcy filing and the attorney for Respondents promising him it would be dismissed. Debtor's credit has been severely damaged post-filing by the Respondents reporting the entry of an unlawful civil judgment against him to the Credit Bureaus. This has not only prevented his credit from recovering post-filing but has lowered it dramatically, robbing him of any chance at a fresh start after bankruptcy.

Debtor has incurred significant loss of time, travel costs, and expenses seeking only to enforce his rights under the Bankruptcy Code. Debtor has had countless verbal interactions with the employees of the Respondents, all to no avail. Debtor also discussed the issue by email, again without getting any resolution from the Respondents. The Debtor has even taken the additional step of speaking with Respondents' attorney, also to no avail. Finally, Debtor's Counsel's calls, letters, and even Motion to Reopen Bankruptcy Case to Pursue a Motion for Sanctions have all failed to get the Respondent to take any steps to rectify this issue. Despite the Debtor making every effort possible to get the Respondents to cease collection, they instead pursued a judgment against him and have continued to demand payment for a pre-petition discharged claim. The Respondents' actions were particularly egregious in light of their affirmative duty to cease all collection of the pre-petition claim under 11 U.S.C. 524 and 523(a)(16).

Debtor has incurred actual damages consisting of attorney fees and costs. Attached hereto is a Declaration of Debtor's Counsel, Ahren Tiller, with an attached breakdown of attorney's fees and costs (See: Exhibit I).

Despite the Debtor's discussion of this incident with Respondent's Counsel and full awareness of the wrongful judgment, Respondents have willfully completely ignored this court's power and defied the Discharge Order by obtaining an abstract of judgment on May 20, 2013 (See: Exhibit E) and have ceased to dismiss said

suit despite countless requests by the Debtor and his Counsel to do so. Therefore, in this situation, Punitive damages are appropriate based upon Respondents' ongoing willful violation of the discharge order.

## III.
## CONCLUSION

WHEREFORE, for the reasons stated above the Debtor respectfully requests this Court enter an order for the following:

A. Compensatory damages in the form of sanctions pursuant to 11 U.S.C. §105 and 11 U.S.C. §524 sufficient to compensate the Debtors for actual damages including but not limited to:
   1. Compensation for the anxiety and stress suffered by Debtor for the unlawful collection calls, and unlawful judgment against Debtor according to proof;
   2. Compensation for the Debtor's lost time and costs spent trying to resolve the Respondent's ongoing stay violation according to proof;
   3. Compensation for the damage caused to the Debtor's post-petition credit score by the invalid entry of said judgment according to proof;
   4. Compensation for attorney's fees and costs of $7,544.20 (See EXHIBIT C).

B. Punitive damages in the form of a "coercive fine" of $15,000.00 made payable to the Debtor for Respondents' willful, reckless, and egregious conduct.

C. Such other and further relief as the Court may deem just and proper.

Dated: June 23, 2014

/s/ Ahren A. Tiller
Ahren A. Tiller
Bankruptcy Law Center, APC
Attorney for Debtor